**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | | |
|---|---|---|
| JOHN BRITTON, LORINDA BRITTON, | ) | |
| SILVERHAWK AVIATION, LLC, and | ) | Case No.: CV-07-547-EJL-LMB |
| DAVID CURRIE, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Plaintiffs, | ) | |
| | ) | Re: Docket Nos. 135, 153 & 154 |
| - vs - | ) | |
| | ) | **ORDER** |
| DALLAS AIR MOTIVE, INC., and | ) | |
| ROLLS ROYCE CORP., | ) | Re: Docket Nos. 129, 132 & 230 |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

Currently pending before the Court are the following motions:  *Motion to Exclude Expert Witness* (Docket No. 129); *Motion to Compel* (Docket No. 132); *Motion for Partial Summary Judgment* (Docket No. 153); and *Motion for Summary Judgment* (Docket No. 154) filed by Defendant Dallas Airmotove, Inc. ("DAI").  Further, Plaintiffs filed a *Motion to Amend* seeking punitive damages (Docket No. 135), and Defendant Rolls Royce filed a *Motion for Summary Judgment* (Docket No. 155).  Additionally, Plaintiff seeks an extension of time in which to respond to eight of DAI's twenty-three Motions in Limine.  *Motion to Continue* (Docket No. 230).  Having carefully reviewed the record, considered oral arguments of counsel, studied the briefs of the parties and being otherwise fully advised, the Court enters the following Report and Recommendation, and Order.

## I. SUMMARY

The factual and procedural history of this action has been extensively set forth in prior orders, and will not be restated here.  In essence, this is a products liability case arising out of a

**REPORT AND RECOMMENDATION AND ORDER - 1**

helicopter crash.[1]  Plaintiffs are an aerial fire-fighting business and fight fires with helicopters.
Giving rise to this action, one of Plaintiffs' helicopters had an engine that was manufactured by
Defendant Rolls Royce and later overhauled by Defendant DAI.  Plaintiff John Britton was
piloting the subject helicopter when it went down.  Plaintiff Lorinda Britton is John Britton's
wife.  According to Plaintiffs, DAI's negligence caused a mid-air engine explosion and
subsequent hard-landing by DAI's improper overhaul of the subject engine.  Alternatively,
Plaintiffs argue that the overhaul manual created by Rolls Royce was inadequate to the extent
that it led DAI to believe that the work performed on the subject engine was safe, when the
engine was in fact not airworthy.

This action was originally set for trial to commence on October 20, 2009, before the Hon.
Edward J. Lodge.  *Order* (Docket No. 18).  On November 22, 2009, Judge Lodge vacated the
trial date to be reset, if necessary, after a ruling is issued on the pending dispositive motions.
*Order* (Docket No. 214).  All other pre-trial deadlines have passed and discovery has closed.

## II. DISCUSSION

**A.    Defendant DAI's Motion to Exclude Expert Witness (Docket No. 129)**

The District Court's initial scheduling order set an expert disclosure deadline of January
5, 2009, and a trial date of October 20, 2009.  On December 30, 2008, the Court approved the
parties stipulation to amend the scheduling order's pre-trial discovery dates.  *Order* (Docket No.
60).  The expert disclosure dates were consequently extended.  *Id.*  Plaintiffs' deadline was

---

[1]  Plaintiffs liken the crash to a violent mid-air explosion.  Not surprisingly, Defendants
describe the incident as an engine malfunction followed by a "hard landing."  While they have
no effect on the outcome of the above captioned motions, the Court's use of the word "crash,"
"explosion," "wreckage" or any other descriptive term is not an endorsement or adoption of
either description.

**REPORT AND RECOMMENDATION AND ORDER - 2**

amended to April 10, 2009, and Defendants' deadline was extended to May 11, 2009.  Rebuttal experts for both sides were to be disclosed on or before May 26, 2009, accordingly.  *Id*.

On April 24th, fourteen days past the April 10 deadline, Plaintiffs filed a motion requesting that the expert disclosure deadline be extended two weeks for Plaintiff Britton's medical, vocational and economic expert testimony.  *Motion for Extension of Time* (Docket No. 91).  Plaintiffs argued that the extension be granted because Britton had been out of state and unavailable to consult with the medical experts, and that the medical testimony was necessary for the vocational rehabilitation and economic experts' opinions.  *Id*.  Defendants filed a joint objection detailing the parties' discussions and attempts at resolving various scheduling conflicts.  *See Joint Objection* (Docket No. 99).  Notably, it appears that Defendants offered to extend the trial date by a short time which would resolve all of the scheduling conflicts.  *Id*. Initially, Plaintiffs refused the offer, but re-offered themselves after they missed their own disclosure deadline.  *Id*.  According to Defendants, at the time they made the extension offer to Plaintiffs, there were conflicts involving the scheduling of depositions.  *Id*.  Having resolved those conflicts by the time Plaintiffs re-offered to extend the trial date, Defendants declined to do so.  *Id*.

The deadline requested by Plaintiffs'to disclose medical, vocational and economic experts was May 15, 2009.  *See Motion for Extension of Time* (Docket No. 91).  Finally, on April 24, Plaintiffs disclosed their liability experts.  While untimely, Defendants do not object.

On July 2, 2009, the Court ruled on Plaintiffs' motion to extend the disclosure deadline after the new proposed deadline had passed.  *Order* (Docket No. 123).  Good cause being shown, the Court entered a new scheduling order effectuating the Plaintiffs' request.  *Id*.  In particular,

**REPORT AND RECOMMENDATION AND ORDER - 3**

the order extended Plaintiffs' deadline to disclose its expert witnesses to May 15, 2009, as requested by Plaintiffs. *Id*. By footnote, the Court acknowledged that the date had already passed, but reasoned that it expected that Plaintiffs met these deadlines in conformance with their own request. *Id*. at p. 21, n. 7.

Plaintiffs, however, failed to disclose the report of economic expert, Dr. Eberle, until July 22, 2009, ten days after the Court's order granting the extension retroactively and over two months past the requested short continuance of two weeks. *See Exhibits D & E to DAI's Motion to Exclude* (Docket No. 129-3). Plaintiffs failed to request further relief from the Court regarding the May 15, 2009, retroactive deadline. Plaintiffs do not to address this failure in their response. Rather, they argue only that they did not disclose Dr. Eberle earlier in order to avoid unnecessary litigation expenses in the event that the Court were to deny the motion for an extension. They contend that once having received the Court's order, they could not "turn the clock back." Thus, Plaintiffs contend, they disclosed Dr. Eberle as soon as possible. They further argue that at the time they disclosed the report, Defendants had sufficient time to depose the expert as all of the depositions were taking place in August. Accordingly, Plaintiffs argue, Defendants were not prejudiced by the untimely disclosure.

In response, Defendants counter that Dr. Eberle's report should be excluded because Plaintiffs failed to comply with the Court's scheduling Order, failed to request relief from the Court from the deadline, and even failed to address, much less meet any applicable standard, for failing to request an extension. *Motion to Exclude* (Docket No. 129). Defendants further assert that they are prejudiced because they would need not only to depose the expert, but to obtain a rebuttal expert and to conduct additional discovery based on never before disclosed information

**REPORT AND RECOMMENDATION AND ORDER - 4**

contained in the expert's report which they did not have time to do given the then October 20 trial date. *Id*.

Federal Rule of Civil Procedure 26(a)(2)(C) provides in relevant part that a party must disclose expert testimony "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). Rule 37(c)(1) excludes from trial any expert opinions that were not disclosed pursuant to the requirements of Rule 26(a)(2), unless the failure to disclose is substantially justified or harmless. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). The burden is on Plaintiffs to show that the failure was substantially justified or harmless. *Id.* at 1107 (*citing Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless . . . .").

The district court has 'particularly wide discretion' in issuing sanction for discovery abuses under Rule 37(c)(1). *Yetti by Molly*, 259 F.3d at 1106 (noting that exclusion of expert appropriate even though litigant did not violate explicit court order). In this case, the Plaintiffs contend that the reason for the untimely disclosure is that they were waiting for the Court's ruling on their motion for an extension of time of two weeks before expending money toward the expert. When the order came out *granting the motion*, Plaintiffs' claim they could not turn back time and disclosed the expert testimony as soon as possible.

Notwithstanding Plaintiffs' contentions, it is suspect that they could not disclose the report within the time requested as Eberle appears to be Plaintiffs' only economic expert and that the originally request was for only for a *brief* two week period. *See Motion for Extension* (Docket No. 91) (Emphasis in original). Further, as previously noted, Plaintiffs do not address

**REPORT AND RECOMMENDATION AND ORDER - 5**

why they did not request further relief from the May 15, 2009, deadline upon learning that the Court's order was retroactive.  In a sense, Plaintiffs have failed to meet their burden of establishing any cause for disregarding this deadline.  Moreover, an inherent flaw in the Plaintiffs' argument is that the Court should assume that the party did not act on its own request and that a court has an obligation to grant more relief than requested and extend a deadline in the even the order was issued following expiration of a deadline.

In the alternative, Plaintiffs argue that the untimely disclosure is harmless.  Plaintiffs point out that the July disclosure allowed Defendants adequate time to depose Eberle because as all of the depositions were scheduled for August.  In making this argument, Plaintiffs fail to address Defendants' need to respond to this expert, including the need for retention of a rebuttal expert and/or additional discovery because of potential newly disclosed evidence.

 The Ninth Circuit has upheld a district court's refusal to consider an expert report under very similar circumstances.  *Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998).  In *Quevedo*, the plaintiff's expert report was disclosed one and a half months late.  *Id.* Like here, the plaintiff in *Quevedo* also failed to justify his disregard of the Court's order setting the deadline.  *Id.*

Nonetheless, after this motion was made, the trial date was vacated and DAI can no longer argue prejudice in re-opening discovery for the limited purposes raised in this motion. Factoring in the public policy favoring disposition of cases on their merits, and in the absence of prejudice, the Court exercises its discretion in denying DAI's motion.  Limited discovery on this issue only will be reopened to allow Defendants adequate time to respond to this expert report.

**REPORT AND RECOMMENDATION AND ORDER - 6**

**B.      Defendant DAI's Motion to Compel (Docket No. 132)**

In 2006, all the parties' experts conducted a joint inspection of the helicopter wreckage. Since that time, the wreckage has been in the possession of Plaintiffs. Subsequent to that inspection, the discovery process has led the attorneys working on this action down paths to unforseen parties or possible defenses that DAI claims warrant further inspection of the helicopter.

DAI seeks to compel access to again inspect some of the helicopter wreckage. *Motion to Compel* (Docket No. 132). DAI contends that the need for a second hull inspection arose in February 2009 following the deposition of John Britton. *Id*. At that deposition, Britton testified, according to DAI, for the first time that during the crash he attempted to jettison the water bucket attached to the helicopter. Apparently, the cargo hook release malfunctioned and did not dump the load. There is no dispute that Britton installed the hook himself. Additionally, DAI asserts that it found an inconsistency between its own expert's report and the expert report submitted by Plaintiffs regarding the wiring to a warning device in the helicopter.

Following several communications between counsel indicating Plaintiffs' intent to allow another inspection, on July 23, 2009, DAI served an untimely formal Rule 34 notice to Produce on Plaintiffs. *Exhibit 10 to DAI's Motion to Compel* (Docket No. 132). As formal discovery on liability closed on July 13, 2009, this notice was nearly two weeks beyond the deadline. *See Order* (Docket No. 123) (extending discovery deadline through July 10, 2009.). Citing the close of liability discovery, as well as the late demand, Plaintiffs refused DAI's demand.

Consequently, DAI seeks an order compelling Plaintiffs to make the cargo hook and the warning device wiring available for inspection. *Id*. DAI asserts that it tried, repeatedly, to

**REPORT AND RECOMMENDATION AND ORDER - 7**

schedule a time when its experts could conduct the inspection, but Plaintiffs either refused access or offered access, but only with strict limitations.  *Id*.  Notably, DAI claims that Plaintiffs conducted several secret tests and inspections during the exact times when DAI was seeking access to the wreckage.  *Id*.

Plaintiffs respond by pointing out that DAI fails to point to a proper legal authority in support of its motion to compel.  *Opposition to Motion to Compel* (Docket No. 150).  Further, Plaintiffs argue that DAI's motion is untimely, that DAI never actually demanded a second inspection of the hull as contemplated by the Rules, and finally, that DAI failed to file a requisite "Rule 37 Certificate" with the court.  *Id*.

It is well-established and beyond reasonable dispute that the trial court can, in its discretion, order a party to produce evidence.  The Ninth Circuit Court of Appeals "reviews a district court's rulings concerning discovery for abuse of discretion.  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469 (9th Cir. 1992); *Ah Moo v. A.G. Becker Paribus, Inc.*857 F.2d 615, 619 (9th Cir. 1988).

Federal Rule of Civil Procedure 37 allows "[a] party, upon reasonable notice to other parties and all persons affected thereby, [to] apply for an order compelling disclosure or discovery . . . ."  Fed. R. Civ. P. 37.  "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  *Id*.  Among others, this motion is appropriate when "a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34."  *Id*.  Finally, the associated motion "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action."  *Id*.  It is in the

**REPORT AND RECOMMENDATION AND ORDER - 8**

discretion of the trial court to order a party to make such a production. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469 (9th Cir. 1992); *Ah Moo v. A.G. Becker Paribus, Inc.*, 857 F.2d 615, 619 (9th Cir. 1988).

It is apparent from reviewing the communications between counsel that DAI repeatedly attempted to coordinate an inspection long before the close of liability discovery.  It is similarly apparent from reviewing the record now before the Court, that Plaintiffs were less than forthcoming in responding to DAI's requests.  Nonetheless, letters, emails and other informal communications do not create a basis for relief under Rule 37.  *See Suid v. Cigna Corp.*, 2036 F.R.D. 227, 229 (D.V.I. 2001) (noting that letters between counsel are not sufficient under Rule 34).  Rather, Rule 34 provides a procedure for production of documents by a party opponent.

> The Federal Rules of Civil Procedure provide necessary boundaries and requirements for formal discovery.  Parties must comply with such requirements in order to resort to the provisions of [Rule 37], governing motions to compel.  Informal requests for production lie outside the boundaries of the discovery rules . . . .  Formal requests clearly implicate the duties of opposing parties to respond, pursuant to [Rule 34]. Letters do not. Formal requests may occasion sanctions. Letters usually do not. To treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery.

*Sithon Maritime Co. v. Holiday Mansion*, No. 96-2262, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998).

True, attorneys often utilizes informal requests to produce documents at depositions, and usually these informal requests are respected and honored.  Nevertheless, DAI's informal requests for production are not recognized as appropriate discovery requests under the Federal Rules.  DAI's failure to serve their request for inspection in accordance with Rule 34 and the court's scheduling order is insufficient to be considered adequate under both Local and Federal Rules.

**REPORT AND RECOMMENDATION AND ORDER - 9**

Nonetheless, as with the previously addressed motion to exclude, after this motion was

made, the trial date was vacated.  Under these circumstances, Plaintiffs cannot reasonably justify

a denial of access to the helicopter parts requested by DAI.  Once again factoring in the policy

favoring disposition of cases on their merits, the Court exercises its discretion in granting DAI's

motion.  The subject helicopter's cargo hook and warning device wiring, along with any

entwined parts shall be immediately made available to DAI for further inspection.

**C.      Plaintiffs' Motion to Amend (Docket No. 135)**

By way of summary, Plaintiffs' argue that the helicopter accident giving rise to this

action was caused, at least in part, by DAI's: (1) deliberate failure to replace the number seven

bearing in the engine; and (2) the installation of an "unairworthy" salvaged nozzle into the gas

turbine engine during the DAI engine overhaul.  *Motion to Amend* (Docket No. 135).  Prior to

this motion, Plaintiffs did not allege any connection between the in-flight "explosion" and the

number seven ball bearing.  *Id*.

According to Plaintiffs, they only recently learned of the bearing theory.  *Id*.  Plaintiffs

contend that on August 11, 2009, the day before Plaintiffs' deposition of DAI's expert, Dr.

Charles Manning, they were given Manning's notes which included conclusions regarding the

engine bearings.  *Id*.  Specifically, Plaintiffs contend that Manning forwards another theory of

cause giving rise to DAI liability.  *Id*.  Plaintiffs claim this theory, combined with the installation

of the unairworthy nozzle, illustrates "clear and convincing evidence that DAI was reckless

when it [failed] to replace the bearings and re-installed a defective device.  *Id*.  Accordingly,

Plaintiffs seek to amend, "adding a claim for punitive damages against DAI for it wanton and

malicious actions when it overhauled the subject engine.  *Id*.

**REPORT AND RECOMMENDATION AND ORDER - 10**

Plaintiffs argue that the delay in making the motion so long after the initiation of this lawsuit, nearly five years ago, was caused by DAI's failure to disclose the defective bearing theory, as well as other unspecified evidence.  Citing Rule 15, Plaintiffs contend that the requisite good cause exists to grant the motion to amend for punitive damages, and that the court should do so with liberality normally given to motions to amend.

DAI, contends that there is no new evidence or any new facts to support Plaintiffs' belated motion to amend.  *DAI Opposition* (Docket No. 158).  Rather, DAI contends that no expert retained by DAI or Plaintiffs supports the bearing failure theory.  *Id*.  Plaintiffs point out the that the opinion of Max Vermij, one of Plaintiffs' experts, is the only evidence that could possibly support the failed-bearing theory, and argue that his opinion is unqualified.[2]  *Id*. Without evidentiary support, DAI urges that the motion to amend be denied.  *Id*.  Additionally, DAI points out that motions to amend for punitive damages required a more stringent standard than Rule 15, as advanced by Plaintiffs.  *Id*.

Claims for punitive damages are substantive in nature and Idaho law is controlling.  *See Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005) ("The question of whether to permit a claim for punitive damages is substantive in nature and accordingly is controlled by relevant Idaho case law." (citing *Doe v. Cutter Biological*, 844 F. Supp. 602, 610 (D. Idaho 1994))).

A motion to amend to seek punitive damages may be allowed if, "after weighing the evidence presented, the court concludes that, the moving party has established . . . a reasonable

---

[2]  This is the subject of a DAI Motion in Limine to Exclude Testimony of Proposed Expert Max Vermij.  *Motion in Limine* (Docket No. 177).  This trial motion will not be addressed here, but will be taken up by Judge Lodge.

**REPORT AND RECOMMENDATION AND ORDER - 11**

likelihood of proving facts at trial sufficient to support an award of punitive damages." Idaho

Code Ann. § 6-1604 (2003). An award of punitive damages is permissible only where the

claimant proves, "by clear and convincing evidence, oppressive, fraudulent, malicious or

outrageous conduct by the party against whom the claim for punitive damages is asserted." *Id.*

 As a matter of substantive law, it is well established in Idaho that punitive damages are

not favored and should be awarded only in the most unusual and compelling circumstances, and

are to be awarded cautiously and within narrow limits. *Manning v. Twin Falls Clinic & Hosp.,*

*Inc.*, 122 Idaho 47, 830 P.2d 1185 (1992); *Jones v. Panhandle Distributors, Inc.*, 117 Idaho 750,

792 P.2d 315 (1990); *Soria v. Sierra Pac. Airlines, Inc.*, 111 Idaho 594, 726 P.2d 706 (1986);

*Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983); *Linscott v. Rainier*

*National Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980); *see also O'Neil v. Vasseur*, 118

Idaho 257, 796 P.2d 134 (Ct. App. 1990).

 An award of punitive damages will only be allowed when the defendant acted in a

manner that was "an extreme deviation from reasonable standards of conduct, and that the act

was performed by the defendant with an understanding of or disregard for its likely

consequences." *Manning*, 830 P.2d at 1190 (*quoting Cheney*, 665 P.2d 661). Further, the

Supreme Court of Idaho has clearly defined the parameters of such an award, and has stated that

"to support an award of punitive damages, [plaintiff] must prove [defendant's] actions toward

[plaintiff] constituted an extreme deviation from standards of reasonable conduct, which was

done with knowledge of the likely consequences and an extremely harmful state of mind."

*Seiniger Law Office, P.A. v. North Pacific Ins. Co.*, 145 Idaho 241, 178 P.3d 606, 615 (2008). In

other words, "[t]he issue revolves around whether the plaintiff is able to establish the requisite

**REPORT AND RECOMMENDATION AND ORDER - 12**

intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC.*, 146 Idaho 118, 191 P.3d 196 (2008) (citing *Myers v. Workmen's Auto. Ins. Co.*, 140 Idaho 495, 503, 95 P.3d 977, 985 (2004)).

When the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, a motion to amend to assert punitive damages will not be allowed. *See Strong*, 393 F. Supp. 2d at 1026 (finding plaintiff had not established reasonable likelihood of proving by preponderance of evidence[3] "the requisite 'extremely harmful state of mind' and 'extreme deviation from reasonable standards'" because of conflicting evidence) (citing *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1187 (9th Cir. 2004)).

Idaho state courts have also made clear that, with respect to punitive damages claims, the decision whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court. *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992) (citing *Hoglan v. First Sec. Bank*, 120 Idaho 682, 819 P.2d 100 (1991)); *Eddins Constr., Inc. v. Bernard*, 119 Idaho 340, 806 P.2d 433 (1991). In this respect, the federal courts are in accord with Idaho state substantive and procedural law. *Foman v. Davis*, 371 U.S. 178 (1962).

Plaintiffs are correct when they argue that Federal Rule of Civil Procedure 15(a) encourages liberal granting of motions to amend pleadings. However, whether to allow a party

---

[3] *Strong* involved Idaho Code § 6-1604's "preponderance of the evidence" standard before its amendment in 2003. Section 6-1604 now places a higher burden on the moving party, i.e., a requirement for "clear and convincing evidence." *See also* BLACK'S LAW DICTIONARY 596 (8th ed. 2004) ("clear and convincing evidence . . . . This is a greater burden than preponderance of the evidence . . . .") The *Strong* standard remains applicable. That is, if the moving party's claims are reasonably disputed and there is substantial evidence that supports the non-moving party's claims, the moving party has not met its burden.

**REPORT AND RECOMMENDATION AND ORDER - 13**

leave to amend the pleadings to assert a claim for punitive damages is another matter, requiring a different standard as is consistently reflected in the significant case law in this jurisdiction. *See, Todd* 191 P.3d 196; *Hall v. Farmers Alliance Mut. Ins. Co.,* 145 Idaho 313, 179 P.3d 276 (2008); *Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 95 P.3d 34 (2004); *Vaught v. Dairyland Ins. Co.,* 131 Idaho 357, 956 P.2d 674 (1998); and *O'Neil*, 796 P.2d 134 (stating that "[p]unitive damages are not favored in the law and should only be awarded in the most unusual and compelling circumstances."). To this extent, the Court must resolve the tension existing between Rule 15(a) and Idaho Code § 6-1604.

As the case law reflects, a plaintiff will be allowed to amend pleadings to assert a claim for punitive damages only if, after weighing the evidence presented, the Court concludes that Plaintiff has established a reasonable likelihood of proving, by clear and convincing evidence, that Defendants' conduct was oppressive, fraudulent, malicious, or outrageous. *See Vendelin*, 95 P.3d at 41. "Clear and convincing evidence is generally understood to be [e]vidence indicating that the thing to be proved is highly probable or reasonably certain." *State v. Kimball*, 145 Idaho 542, 181 P.3d 468, 472 (2008) (internal quotations omitted).

Plaintiffs' claim for punitive damages is rooted in DAI's allegedly "wanton and malicious action when it overhauled the subject engine. Plaintiffs contend that this is not a state law issue, but a matter of procedure. In a word, Plaintiffs are incorrect. To succeed on the motion, Plaintiffs must show a reasonable likelihood that they could prove by a preponderance of the evidence "that the [DAI] acted in a manner that was an extreme deviation from reasonable standards of conduct, that the act was performed with an understanding of or disregard for its likely consequences, and that the [DAI] acted with an extremely harmful state of mind." *Kuntz*,

**REPORT AND RECOMMENDATION AND ORDER - 14**

385 F.3d at 1187; *see also Vendelin v. Costco Wholesale Corp.*, 140 Idaho 416, 95 P.3d 34, 41-42 (2004).

In this case, Plaintiffs have not made the necessary showing required under Idaho law for the motion to amend for a claim of punitive damages to be granted. Further, there is no competent evidence in the record that indicates DAI engaged in an extreme deviation from reasonable standards and acted with a harmful state of mind when it overhauled the subject engine. Plaintiff makes much of DAI's allegedly reckless behavior in failing to replace the bearings and re-installing a defective nozzle. But, as DAI points out, Plaintiffs' own experts, as well as DAI's concluded that the bearings had no nexus to the crash. Further, no evidence exists to support a contention that DAI disregarded safety concerns and recklessly or even knowingly deviated from the manufacturer's manual in its overhaul of the subject engine.

Upon consideration of the evidence in the record, the Court finds and thus concludes, that Plaintiffs have not established a reasonable likelihood of proving by a preponderance of the evidence the requisite "extremely harmful state of mind" and "extreme deviation from reasonable standards" to go forward on a claim for punitive damages. *See Kuntz*, 385 F.3d at 1187. Accordingly, Plaintiffs' motion to amend should be denied.

**D.     Motions for Summary Judgment (Docket Nos. 153, 154 & 155)**

As an initial matter, at the October 7, 2009, hearing, Rolls Royce and Plaintiffs requested that the Rolls Royce motion for summary judgment (Docket No. 155), be stayed for 60 days. The Court was informed that all matters between Rolls Royce and Plaintiffs have been settled. However, pursuant to the rules of the Bankruptcy Court, the settlement must be first approved by the presiding Bankruptcy Judge. Accordingly, this Report and Recommendation will not address

**REPORT AND RECOMMENDATION AND ORDER - 15**

that motion, but will, however, require that counsel for Rolls Royce file settlement papers or a status report with the Court by December 18, 2009.

1.    *Defendant DAI's Motion for Partial Summary Judgment (Docket No. 153)*

Defendant DAI moves for partial summary judgment with regard to damages sustained by Plaintiffs Silverhawk Aviation, LLC, and David Currie, owner of the helicopter and of Silverhawk. *Motion for Partial Summary Judgment* (Docket No. 153). Citing several Idaho cases, DAI contends that as a matter of Idaho law, Plaintiffs Silverhawk and Currie cannot recover damages beyond of the value of the destroyed helicopter.[4] *Id.* In other words, DAI argues that as a matter of Idaho law, Silverhawk and Currie have damages capped at the value of the lost vehicle. *Id.* Additionally, DAI contends that there are no disputed facts that could interfere with the granting of this motion. *Id.* Defendant Rolls Royce joins in DAI's motion. *Joinder* (Docket No. 138).

Plaintiffs respond that DAI's motion must fail on substantive grounds.[5] *Response to Motion* (Docket No. 145). Plaintiffs argues that Idaho law provides three applicable exceptions that allow for economic loss recovery in tort. *Id.* (citing *Duffin v. Idaho Crop Improvement Assoc.*, 126 Idaho 1002, 895 P.2d 1195 (1995). Plaintiffs conclude that the provided exceptions as well as disputed material facts bar summary judgement on this issue. *Plaintiff's Statement of Genuine Issues of Material Fact* (Docket No.148).

---

[4]  Notably, there is no dispute of the helicopter's value or that it was totally destroyed.

[5]  Plaintiffs also contend that the motion must fail on procedural grounds as well. However, this issue has already been resolved by the court. *See Order* (Docket No. 225).

**REPORT AND RECOMMENDATION AND ORDER - 16**

DAI submitted a brief reply contending that Plaintiffs "choose to completely ignore [the legal issue raised in DAI's motion]." *Reply* (Docket No. 156).  DAI also submits that *Plaintiff's Statement of Genuine Issues of Material Fact* have no bearing on the partial summary judgment motion.  *Id*.  In fact, DAI contends that even if the allegedly disputed facts were all resolved in Plaintiff's failure, the relief requested, partial summary judgment, should still issue.  *Id*.

The Court has reviewed the legal citations submitted in support of DAI's motion.  While Plaintiffs cite numerous exceptions to the economic loss rule,[6] DAI is actually arguing a basic damages principle in Idaho tort law – that the measure of damages for totally destroyed personal property is the value of the property at the time of the injury as opposed to when property is merely damaged, where the measure is the value of its use during the time needed for repairs and the cost of repairs.  *See McGuire v. Post Falls Lumber and Manufacturing Co.*, 23 Idaho 608 (1913).

According to DAI, *McGuire* and its progeny limits Plaintiffs claim for damages to the value of the destroyed helicopter.  *Motion for Partial Summary Judgment* (Docket No. 153).  However, DAI's application of Idaho law is non sequiter.  *McGuire* merely stands for the proposition that Plaintiffs cannot claim property damage to the totally destroyed helicopter beyond what the helicopter was worth at the time of the crash – even if repairing or replacing the helicopter results in a higher cost to Plaintiffs.

A more thorough examination of Idaho law quickly reveals that if a plaintiff bringing an action in tort has suffered either personal injury or property damage, Idaho courts generally also

_____

[6] Notably, none of which apply – even if DAI was arguing Idaho's economic loss rule.

**REPORT AND RECOMMENDATION AND ORDER - 17**

allow recovery for economic losses."[7]  *See G&M Farms v. Funk Irrigation Co.*, 119 Idaho 514,

527; 808 P.2d 851, 864 (1991) (*citing Clark v. International Harvester Co.*, 99 Idaho 326; 581

P.2d 784 (1978)).  With this in mind, DAI's motion should be denied.

### 2.    *Defendant DAI's Motion for Summary Judgment (Docket No. 154)*

DAI argues that summary judgment is appropriate for counts one, two, four and six of

Plaintiffs' complaint.  *Motion for Summary Judgment* (Docket No. 154).  Count one is for strict

products liability, count two is for negligent product liability, count four is for failure to warn,

and count six is a claim for breach of warranty.  *Complaint* (Docket No. 1).  According to DAI,

because it was merely a provider of professional services — engine overhaul and repair — strict

liability cannot apply.  *Motion for Summary Judgment* (Docket No. 154).  Additionally, DAI

asserts that it had no duty to warn Plaintiffs, thus foreclosing on Plaintiffs' duty to warn claim.

*Id*.  DAI also argues that count two, for negligent product liability, and count three for negligent

modification, repair and maintenance are duplicitive.  *Id*.  Finally, DAI argues that because it

provided no services to Plaintiffs, and never issued an express warranty for its services,

Plaintiffs' claim for breach of warranty must fail.  *Id*.  According to DAI, there are no disputed

material facts precluding summary judgment on these issues.  *Id*.

Plaintiffs argue that DAI is a producer of goods and is thus liable under a theory of strict

liability.  *Response* (Docket No. 217).  Plaintiffs classify DAI as a manufacturer, or rather

"remanufacturer" of goods, producing "new 'Zero Time' engines."  *Id*.  Plaintiffs also clarify

that the second cause of action is "merely a poorly worded negligence cause of action."  *Id*.

---

[7]  An "economic loss" is "[a] monitary loss such as lost wages or profits."  Blacks Law
Dictionary 589 (9th Ed. 2009).

**REPORT AND RECOMMENDATION AND ORDER - 18**

With regard to the failure to warn claim, Plaintiffs allege that when DAI machined the second-stage turbine nozzle beyond the parameters contained in the Rolls Royce manual, a duty to warn of the noncompliance arose, and DAI breached that duty in failing to issue such a warning.  *Id*. At oral arguments, Plaintiffs stipulated to the dismissal of the warranty claims.  *See Hearing* (Docket Entry 229).

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

Motions for summary judgment are governed by FRCP 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition

**REPORT AND RECOMMENDATION AND ORDER - 19**

excerpts) but may simply point out the absence of evidence to support the nonmoving party's

case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

> If the moving party meets its initial burden, then the nonmoving party:
>
> (1) must make a showing sufficient to establish a genuine issue of fact with respect
> to any element for which it bears the burden of proof; (2) must show that there is an
> issue that may reasonably be resolved in favor of either party; and (3) must come
> forward with more persuasive evidence than would otherwise be necessary when the
> factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund,* 883 F.2d 371, 374 (9th Cir.

1989) (citation omitted).[8]  "[I]f a rational trier of fact might resolve the issue in favor of the

nonmoving party, summary judgment must be denied."  *T.W. Elec. Serv., Inc.*, 809 F.2d at 631;

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding a motion for summary

judgment must be denied when the "evidence is such that a reasonable jury could return a verdict

for the nonmoving party").

In reviewing such motions, evidence is viewed in the light most favorable to the non-

moving party, and the court must not make credibility findings.  *Id.*  Direct testimony of the non-

movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th

Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from

circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

---

[8] FRCP 56(e)(2) goes on to state:

> When a motion for summary judgment is properly made and supported, an
> opposing party may not rely merely on allegations or denials in its own
> pleading; rather, its response must – by affidavits or as otherwise provided in
> this rule – set out specific facts showing a genuine issue for trial.  If the
> opposing party does not so respond, summary judgment should, if appropriate,
> be entered against that party.

*See* Fed. R. Civ. P. 56(e)(2).

**REPORT AND RECOMMENDATION AND ORDER - 20**

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.  If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim.  *Id.*

Notably, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

It is also well-established that only admissible evidence may be considered in ruling on a motion for summary judgment.  *Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir.2002); *see also* Fed.R.Civ.P. 56(e).  In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered.  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).  If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the particular piece of evidence itself is hearsay.  *Id*. (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

Finally, statements in a brief, unsupported by the record, cannot be used to create an issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).  The Circuit "has repeatedly held that documents which have not had a proper foundation laid to

**REPORT AND RECOMMENDATION AND ORDER - 21**

authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec.*

*Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988).  Authentication, required by Federal Rule of

Evidence 901(a), is not satisfied simply by attaching a document to an affidavit.  *Id.*  The

affidavit must contain testimony of a witness with personal knowledge of the facts who attests to

the identity and due execution of the document.  *Id.*

With the foregoing in mind, the motion will be considered on a count by count basis.

### a.    *Count 1: Strict Liability*

Idaho has adopted the rule of strict liability in tort as it appears in the Restatement

(Second) of Torts § 402A (1965):

> (1) One who sells any product in a defective condition unreasonably dangerous to
> the user or consumer or to his property is subject to liability for physical harm
> thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and
> >
> > (b) it is expected to and does reach the user or consumer without substantial
> > change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of his
> > product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any
> > contractual relation with the seller.

*Shields v. Morton Chemical Co.*, 95 Idaho 674, 676, 518 P.2d 857, 859 (1973).  Further, it is

beyond reasonable dispute that, under Idaho law, the rule of strict liability does not extend

beyond sellers of products to sellers of services.  *See Hoffman v. Simplot Aviation*, 97 Idaho 32

(1975).

**REPORT AND RECOMMENDATION AND ORDER - 22**

DAI argues that, as an overhauler, it did not provide any products, but only services on the subject engine.  Likewise, as an engine servicer, DAI submits that strict liability does not apply here.

Plaintiffs, on the other hand, contend that DAI did, in fact, provide a product.  Plaintiffs characterize DAI's actions in overhauling the subject engine as creating a new product – a "new Zero Time turbine engine."  Plaintiffs argue that DAI is a "remanufacturer," which makes DAI subject to Idaho strict liability law.  *Citing* I.C. § 6-1402 ("Manufacturer" includes a product seller who designs, produces, makes, fabricates, constructs, or remanufactures the relevant product or component part of a product before its sale to a user or consumer.").

This is a novel issue in Idaho jurisprudence.  However, the court finds the following Tennessee decision to be instructive:

> This Court is of the opinion that a piece of machinery that is substantially rebuilt or reconditioned becomes a "new" product for the purpose of a products liability action . . . . Whether the [remanufactured part] at issue in this case qualified as a "new" product . . . is a factual issue not appropriate for summary disposition.

*Rollins v. Cherokee Warehouses, Inc.*, 635 F.Supp. 136, 138 (E.D. Tenn. 1986).

Whether the product was substantially rebuilt or reconditioned is a matter for the trier of fact to resolve.  Accordingly, whether the work of DAI is that of an "overhauler" or a "remanufacturer" is a question of fact and this Court recommends that DAI's motion for partial summary judgment be denied on this issue.

### b.     *Count 2: Negligent Product Liability*

Plaintiffs state that count two of the complaint is merely a poorly worded general negligence claim and that count three is a more specific negligence cause of action.  *Response to Motion* (Docket No. 145).

**REPORT AND RECOMMENDATION AND ORDER - 23**

Contrary to plaintiffs' argument, this is not a matter of sloppy pleading or an alternative cause of action, which Plaintiffs are entitled to claim. Idaho law does not recognize a separate cause of action for negligent modification, repair and maintenance – only negligence. As such, this is a matter of pleading duplicative claims for negligence under Idaho law which is not allowed under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 2. Plaintiffs have not pointed to Idaho case law supporting Plaintiffs' position that negligent modification, repair and maintenance is a unique and specific claim for relief with elements unique to that claim. The Court's own independent research finds that no such cause of action exists in Idaho outside of a claim for negligence. Accordingly, count two of Plaintiffs' complaint (Docket No. 1) should therefore be dismissed altogether.

### c.    *Count 4: Failure to Warn*

Generally, a claim alleging that a manufacturer or seller failed to provide adequate warning of a product's dangers may be brought under strict liability or negligence. *See Watson v. Navistar Int'l Trans., Corp.*, 121 Idaho 643, 660, 827 P.2d 656, 673 (1992). While it is unclear what doctrine Plaintiffs are bringing their failure to warn claim, "there generally is little difference in the requirements and analysis of the duty to warn under either . . . theory." *Toner v. Lederle Laboratories*, 112 Idaho 328, 305, 732 P.2d 297, 336 (1987).

DAI admits that it provided no warnings following the work they performed on the subject engine. DAI does argue, however, that it had no duty to warn — that the limits of its duties are encompassed within the Federal Aviation Regulations, and that DAI complied with its requirements under those regulations. DAI's position is mistaken, however, that the boundaries

**REPORT AND RECOMMENDATION AND ORDER - 24**

of its duty to warn are confined to regulations as duty to warn is not always imposed by statue or rule.

A party who commits an act which creates a foreseeable risk of injury to another is charged with an affirmative duty to exercise due care to avoid that injury or damage.  "Where, in the exercise of due care, a reasonable person would give a warning, [Defendant] has a duty to warn . . . ." J.D. Lee & Barry A. Lindahl, Modern Tort Law § 27-8 (West Group 2002).  Further, a product becomes defective if "the defendant 'has reason to anticipate that danger may result from a particular use' of his product and fails to give adequate warnings of such danger." *Rindlisbaker v. Wilson*, 95 Idaho 752, 759, 519 P.2d 421, 428 (1974) (*quoting* Restatement (Second) of Torts § 402A cmt. h (1977)).

Should the jury agree with Plaintiffs' theory that DAI's failure to comply with the Rolls Royce manual created an obvious danger, a duty to warn may exist.  After careful review of the evidence in the record, the Court finds, and thus concludes, that Plaintiffs have submitted adequate evidence to preclude summary judgement on this issue.  Accordingly, this is an issue for the trier of fact, and summary judgment would be improper.

**E.     Plaintiffs' Motion to Extend Deadline (Docket No. 230)**

On September 21, 2009, DAI filed twenty-three motions in limine.  As previously noted, one day later the jury trail was vacated.  *Order* (Docket No. 214).  Nonetheless, the scheduling order required that all responses to those motions be due October 15, 2009.  On October 9, 2009, Plaintiffs filed a motion requesting an extension of time in which to reply to DAI's motions in limine.  *Motion to Continue* (Docket No. 230).  Plaintiffs cite the vacated trial, lack of prejudice to DAI and an October 26 trial date in California as reasons for extending the deadline. *Id*.

**REPORT AND RECOMMENDATION AND ORDER - 25**

DAI opposes the extension arguing that they will be prejudiced by "the extreme advantage of time" that would be given to Plaintiffs to respond to DAI's motions.  DAI points to the fact that Plaintiffs would be given several weeks in which to reply to DAI's motions.  Additionally, DAI argues that Plaintiffs have failed to show good cause for an extension of time.  Finally, DAI points to the number of extensions Plaintiffs have requested and urge that any further extensions be denied to moved the case forward.[9]

When a party requests enlargement of time (1) "before the expiration of the period originally prescribed" and (2) "for cause shown," then the court may in its discretion order an enlargement of time.  Fed.R.Civ.P. 6(b).  "Pre-expiration extensions are granted routinely if they are sought in good faith and do not prejudice the adversary."  *Id.*, cmt.

Based on everything contained in the record, the Court finds, and thus concludes, that both Plaintiffs and DAI have been untimely in conducting discovery, in filing pertinent pre-trial motions and applications, in notifying the Court of potential problems that could delay the start of trial, and in complying with the Federal Rules of Civil Procedure.  Moreover, no "good cause" has been established that would justify further delay in this matter.  Additionally, DAI is correct that such an extension as requested would give Plaintiffs an unfair advantage: "Allowing one party [more time] to oppose motions, and then providing [less time] to the movant for reply briefs, does create an unfair advantage and prejudice."  *DAI's Opposition to Motion* (Docket No. 232).  Accordingly, Plaintiffs motion is denied.

---

[9]  It is worth noting that Plaintiffs attempted to meet and confer with DAI regarding the proposed extension.  It is also worth noting the irony in Plaintiffs allegation that DAI "wanted to play hard ball and refused to stipulate to continue the opposition deadline."  The record is replete with uncooperative and inflexible positions taken by all parties in this litigation.

**REPORT AND RECOMMENDATION AND ORDER - 26**

## III. ORDER

Accordingly, IT IS HEREBY ORDERED:

1.      DAI's Motion to Exclude Expert Witness (Docket No. 129) is DENIED;

      A.      Limited discovery on this issue is reopened.  Defendant DAI shall have until November 30, 2009, in which to prepare a rebuttal expert and otherwise respond to Plaintiffs' expert, W. David Eberle.  F.R.C.P. 26(a)(2)(B) and Local Rule 26.2(b) shall be followed for all expert disclosures;

2.      DAI's Motion to Compel (Docket No. 132) is GRANTED;

      A.      Limited discovery on this issue is reopened.

      B.      Plaintiffs shall immediately make available for inspection the subject cargo hook and wiring devices;

            i.      DAI shall disclose expert witnesses and the expected testimony of those witnesses, if any, on or before November 30, 2009;

            ii.      Plaintiffs rebuttal experts, if any, shall be disclosed on or before December 18, 2009;

            iii.      Any objections to these experts shall be filed by January 12, 2010;

3.      Plaintiffs' Motion to Continue (Docket No. 230) is DENIED;

4.      Counsel for Rolls Royce shall file settlement papers by December 18, 2009.

## IV. RECOMMENDATION

Based upon the FOREGOING, it is hereby RECOMMENDED that the District Court enter an Order consistent with the following:

1.      Plaintiffs' Motion to Amend Complaint (Docket No. 135) be DENIED;

**REPORT AND RECOMMENDATION AND ORDER - 27**

2.      DAI's Motion for Partial Summary Judgment (Docket No. 153) be DENIED;

3.      DAI's Motion for Summary Judgment (Docket No. 154) be GRANTED IN PART

AND DENIED IN PART:

A.      GRANTED as to Counts two and six of Plaintiffs' complaint; and

B.      DENIED as to Counts one and four of Plaintiffs' complaint.



DATED:  **October 30, 2009**.

_Leupy Boyle_
Honorable Larry M. Boyle
United States Magistrate Judge

**REPORT AND RECOMMENDATION AND ORDER - 28**